J. S04033/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: L.N.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.N.M. | : | No. 1572 MDA 2017 |

Appeal from the Decree, September 21, 2017,
in the Court of Common Pleas of Lancaster County
Orphans' Court Division at No. 1589-2017

BEFORE: SHOGAN, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED MARCH 20, 2018**

B.N.M. ("Mother") appeals from the decree dated September 21, 2017,[1] in the Court of Common Pleas of Lancaster County, granting the petition of Lancaster County Children and Youth Social Service Agency (the "Agency") and involuntarily terminating her parental rights to her minor, dependent child, L.N.D. (the "Child"), a female born in August of 2015, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5),

---

[1] While the docket reflects a docket date of September 21, 2017, and the decree indicates copies were sent, there is no notation on the docket that notice was given and that the order was entered for purposes of Pa.R.C.P. 236(b). *See Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"). *See also* Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)".). While we consider the matter on the merits, we caution the Lancaster County Prothonotary's Office as to compliance with the rules with regard to the entry of orders.

and (8).[2, 3]  After review, we affirm, and we deny, without prejudice, counsel for Mother's petition to withdraw as counsel.

The trial court summarized the relevant procedural and/or factual history as follows:

### Procedural History

> On March 30, 2016, the [Agency] filed a Petition for Temporary Custody of [Child].  A Shelter Care Order was entered following a hearing on March 31, 2016.  Father failed to appear for the Shelter Care Hearing despite receiving notice.  Mother appeared but waived the Shelter Care Hearing without admitting any allegations.  Following a hearing on April 14, 2016, the [c]ourt adjudicated the child dependent and approved a child permanency plan with the goal of return to parents and a concurrent placement goal of adoption.  Mother attended the Adjudication and Disposition Hearing but Father did not.  On July 20, 2017, the Agency petitioned to terminate the parental rights of [Father] and [Mother] to [Child] pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), and (8).  A hearing on the termination petition was held on

---

[2] By the same decree, the trial court additionally involuntarily terminated the parental rights of Child's father, C.D. ("Father"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).  Father filed a separate appeal addressed by separate Memorandum at Superior Court Docket No. 1629 MDA 2017.

[3] At the time of Child's birth, Mother was married to N.M. ("presumptive father").  Presumptive father's parental rights were terminated on August 24, 2017.  (Notes of testimony, 9/21/17 at 62-63, 107; decree, 8/24/17.)  Notably, paternity testing established Father's paternity in June 2016.  (Notes of testimony, 9/21/17 at 107.)

September 21, 2017[4, 5] and the [c]ourt issued a decree involuntarily terminating Mother's and Father's rights to [Child].[6] Mother and Father, on October 13, 2017, and October 23, 2017, respectively, filed a Notice of Appeal to the Superior Court of Pennsylvania of the September 21, 2017 Orphans' Court Order terminating their parental rights.

Factual History

The Agency became involved with Mother and Father since the birth of Child in August of 2015. Due to the baby's low birth weight and signs of withdrawal symptoms due to morphine and other medications Mother was taking during her pregnancy, Child remained in the neonatal care unit several weeks following her birth. The Agency attempted to avoid placement of the Child but Mother and Father did not participate in random drug

---

[4] The Agency presented the testimony of Jonathan Gransee, Psy.D., clinical psychologist, who performed a psychological evaluation of Mother and a parenting capacity evaluation of Father; and Caitlin Hoover, Agency caseworker. The Agency additionally offered Exhibits P-1 through P-5, which, upon review, were never admitted on the record.

Notably, Mother, who was represented by counsel, was not present due to alleged health issues, and no evidence was presented on her behalf. Father, also represented by counsel, was present but did not testify or present any evidence on his behalf.

[5] Guardian **ad litem**, Cynthia L. Garman, Esq., also participated in these proceedings. Ms. Garman argued and filed a brief in support of the termination of parental rights. A Court Appointed Special Advocate ("CASA") was additionally appointed. The record reveals that the CASA recommended Child remain where placed and also favored termination of parental rights. (Notes of testimony, 9/21/17 at 110.) We observe that this report was not marked and admitted as part of the record.

[6] While the decree only indicates termination pursuant to Subsections (a)(1), (2), (5), and (8), the record reflects that evidence was presented with regard to Subsection (b) and the trial court addressed Subsection (b) both on the record and in its Rule 1925(a) opinion.

screens and violated the safety plan. The Agency took custody of the Child on March 30, 201[6]. At the time of the termination hearing, Mother and Father failed to make significant progress and, neither parent had completed any goal on their reunification plans.

Trial court opinion, 11/3/17 at 1-2 (unpaginated).

On appeal, Mother raises the following issues for our review:

I. Whether the [c]ourt erred in denying Mother's request for a continuance of the termination of parental rights hearing due to her health issues?

II. Whether the [c]ourt erred when it terminated Mother's rights?

III. Whether the [c]ourt erred in concluding that Mother had, by conduct continuing for more than six (6) months, evidenced a settled purpose of relinquishing parental claim to the child and had refused or failed to perform her parental duties?

IV. Whether the [c]ourt erred in concluding that the evidence clearly and convincingly established that the repeated and continued incapacity, neglect, or refusal of Mother had caused the child to be without essential parental care, control and subsistence necessary for her physical and mental well-being and that the conditions and causes of the incapacity, neglect, or refusal cannot or will not be remedied by Mother?

V. Whether the [c]ourt erred in concluding that the Lancaster County Children and Youth Agency had met its burden in proving that Mother's parental rights should be terminated when there was evidence that Mother had been actively working on and completing the goals on her child permanency plan?

> VI. Whether the [c]ourt erred in finding that terminating Mother's parental rights would best serve the needs and welfare of the child?

Mother's brief at 8-9.

At the outset, we address Mother's challenge to the trial court's denial of counsel's request for a continuance on her behalf at the termination hearing. "It is well settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court." *Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa.Super. 2009) (citation omitted). "Further a trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion." *Id.* As we have consistently stated, an abuse of discretion is not merely an error in judgment. *Id.* Rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Id.*

In concluding that the denial of Mother's request for a continuance was proper, the trial court reasoned as follows:

> It was proper for the [c]ourt to deny Mother's request for a continuance. Mother has had a long history of asking for continuances in this case. In the past, Mother has asked for continuances stating she has a medical appointment that conflicts with the time of the hearing when in fact there was no conflict in time. Mother also had a criminal hearing scheduled for September 18, 2017, for which she did not appear and a warrant was issued for her arrest.

> Mother claims her health issues caused her mobility problems but she refused to attend the hearing via telephone. Mother has canceled appointments related to her objectives. In one instance, she stated she wanted to attend Child's doctor appointments. She never rescheduled her canceled appointments nor did she attend Child's appointments. She has failed to appear for scheduled drug tests. She was discharged from her domestic violence offenders group for missing five (5) sessions. Originally[,] Mother was granted weekly visits with Child. However, after missing thirty-two (32) [of] forty-five (45) visits, her visits decreased to bi[-]weekly. Mother missed seven (7) of the eleven (11) bi-weekly visits. Mother requested that her visits take place in the home due to her health problems to which [the] Agency requested a letter from a doctor stating that Mother was unable to go to the [A]gency for visits and visits needed to take place in her home. No letter was ever presented to the [A]gency. For all these stated reasons, it was proper for the [c]ourt to deny Mother's request for a continuance.

Trial court opinion, 11/3/17 at 2-3 (citations omitted).

Mother, however, argues that the court's denial of the request for a continuance amounted to "a deprivation of her right to testify on her own behalf and to participate in the proceedings." (Mother's brief at 15.) In so arguing, Mother references *In re Adoption of A.N.P.*, 155 A.3d 56, 68 (Pa.Super. 2017), a case where a panel of this court found that "the trial court violated Mother's constitutional guarantee to due process when it precluded her from the opportunity to be heard." Mother asserts as follows:

> Similarly, in the instant case, the trial [c]ourt's denial of counsel's request for a continuance denied Mother the opportunity to participate, testify, and present evidence on her own behalf and it denied her

> counsel the ability to present evidence in the form of Mother's testimony. Essentially, the trial [c]ourt violated Mother's constitutional guarantee to due process when it denied counsel's continuance request because Mother was precluded from presenting her case to the [c]ourt. Based upon the above, Mother requests that the Decree and Order terminating her rights to her child be vacated, that the case be remanded for further proceedings before the trial [c]ourt, and that she be given the opportunity to present her case at subsequent proceedings before the [c]ourt.

Mother's brief at 17. We disagree.

Upon review, we discern no abuse of discretion with regard to the denial of the request for a continuance, and as such, we do not disturb the court's determination. We find that the factual circumstances of *A.N.P.* are distinguishable from the instant matter. In *A.N.P.*, the mother was present and was excused from the courtroom during the termination proceedings by the court after raising illness. The court then refused to allow the mother re-entry and to allow the presentation of her testimony. *A.N.P.*, 155 A.3d at 56-57. Here, however, Mother, who had a history of continuances, cancellations, and non-appearances, failed to appear. Mother e-mailed her counsel the morning of the termination hearing indicating medical issues and an appointment that morning without any supporting medical documentation establishing that she could not attend the hearing. (Notes of testimony, 9/21/17 at 4-9.) Mother's first issue is, thus, without merit.

We next proceed to Mother's challenge to the court's termination of her parental rights. In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d [1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis

of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d at 1201, quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998). In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze

the court's termination decree pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Instantly, in finding grounds for termination pursuant to Subsection (a), the trial court stated the following:

Despite Child['s] being in Agency custody for eighteen months, Mother failed to complete any of her plan's objective[s]. Mother has not remained drug free. Mother was asked to complete a drug and alcohol evaluation by an Agency[-]approved drug and alcohol provider and was referred by the Agency to an approved provider on July 18, 2016. On July 29, 2016, Mother contacted the Agency and reported being admitted into a program for detox. Upon discharge, another appointment was set up for an evaluation on August 17, 2016. Mother did not follow through with this appointment. Mother was asked to complete another drug and alcohol evaluation to allow the Agency to provide input. Mother agreed to have another evaluation done but never followed through. Mother was admitted for inpatient treatment on August 29, 2016.

Mother was drug screened prior to her child visits. On more than one occasion, Mother tested positive for Opiates and Benzodiazepine for which she did not have a valid prescription. On numerous occasions, Mother refused the Agency's request for a drug screen. On August 24, 2017, the [c]ourt ordered Mother to complete a drug screen. Mother refused to be screened at that time. She said she had an appointment but would return to the Agency later that day. Mother never came that day nor any day thereafter. The Agency contacted Mother the morning of September 14, 2017 to come in for a drug screening before the close of the day. Mother refused stating she had other things to do.

Mother failed to improve her mental health functioning. Although knowing since July 18, 2016, she needed to complete a psychological evaluation with Dr. Jonath[a]n Gransee, Mother did not have her evaluation until August of 2017. Dr. Gransee was reluctant to complete Mother's evaluation because of her threatening and hostile behavior towards him. Dr. Gransee recommended that Mother participate in anger management, a drug and alcohol evaluation, medication management, and no less than twenty-six (26) weekly individual therapy

sessions. At the time of the hearing, Mother had attended only six (6) individual therapy sessions and was close to being discharged from therapy for poor attendance.

Mother failed to complete the domestic violence objective by not completing domestic violence offenders therapy. Mother was admitted to a twelve (12)[-]week program, however, Mother was discharged from the program after missing five (5) classes.

Mother has not remained crime free. Mother owes approximately twenty-four hundred dollars ($2,400) in parking fines, has missed payments, and was arrested on a warrant on August 23, 2017. Mother also failed to resolve her drug charges. Mother did not appear for her court date on those charges and a warrant was issued for her arrest on January 28, 2017.

Mother has not completed her objectives of financial and housing stability. Mother has not provided Agency with proof of income despite claiming she receives social security and food stamps. Mother currently resides with her husband, father and her other children. Mother's relationship with [her] husband is unstable and abusive. Mother's nineteen (19)[-]year[-]old son also resides in the home. The son has been convicted of ten (10) felony counts of child pornography and it is not recommended that he be around any child more than two years younger than he without supervision.

Originally[,] Mother was granted weekly visits with Child. However, after missing thirty-two (32) [of] forty-five (45) visits, her visits decreased to bi[-]weekly in March 20, 2017. Thereafter, she missed seven (7) of the eleven (11) bi-weekly visits. Mother requested her visits take place in the home due to her health problems. The Agency requested a letter from a doctor stating that Mother was unable to go to the Agency for visits and that the visits needed to take place in her home. No letter was

> ever presented to the Agency by Mother. The last visit Mother had with Child was on August 31, 2016.[7]

Trial court opinion, 11/3/17 at 5-6 (unpaginated; citations omitted).

Mother, however, argues that the court erred in determining that she had failed to complete any objectives established. (Mother's brief at 27-31.) Mother asserts that her drug and alcohol, mental health, and domestic violence objectives were ongoing, not incomplete. (*Id.* at 27-29.) She further maintains that the Agency's failure to make a referral for parenting prevented her completion of this objective. (*Id.* at 29-30.) Likewise, Mother argues that she completed her housing and income objectives. (*Id.* at 30-31.) Lastly, as to her commitment objective, Mother contends that "it was unreasonable for the Agency not to grant Mother's requests for home visits. Due to the Agency's actions, Mother missed several visits with the child." (*Id.* at 30.) Mother, therefore, maintains that "the only objective that was incomplete at the time of the hearing was parenting. . . ," which, as indicated, she blames on the Agency. (*Id.* at 31.) We disagree.

A review of the record supports the trial court's determination of a basis for termination under Section 2511(a)(2). As we discern no abuse of discretion or error of law, we do not disturb the court's findings. The evidence reveals that Mother failed to complete her established objectives

---

[7] Given that Mother's visitation decreased to bi-weekly in March 2017, it would appear that this is a misstatement as to when her last visit with Child occurred.

contained within her child permanency plan. Agency caseworker, Caitlin Hoover, recounted Mother's objectives as: to remain free from drugs and the misuse of alcohol, to improve mental health functioning to the extent that she can care for her child, to remain free of domestic violence, to remain crime free, to learn and use good parenting skills, to be financially stable in order to provide for herself and her child, to obtain and maintain a home free and clear of hazards for herself and her child, and to maintain an ongoing commitment to her child. (Notes of testimony, 9/21/17 at 64, 69-73.) Significantly, Ms. Hoover testified that Mother failed to complete her objectives. (*Id.* at 76.)

Further, Dr. Gransee testified as to Mother's perceiving herself as and acting and reacting as a victim, which could be harmful to those around her. (*Id.* at 27-30.) Specifically, he stated that others "may develop trauma disorders as well." (*Id.* at 29.) He further explained how Mother's behaviors may in effect "continu[e] the pattern, the cycle of abuse from generation to generation. . . ." (*Id.* at 30.) Dr. Gransee opined that, despite Mother's reported therapy, he was not hopeful as to her ability to change in the future. (*Id.* at 30-31.)

As this court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims

of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for their physical and mental well-being. ***See In re Adoption of M.E.P.***, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. ***See id.***

As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b). ***In re B.L.W.***, 843 A.2d at 384. We, therefore, need not address any further subsection of Section 2511(a) and turn to whether termination was proper under Section 2511(b).

As to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa.Super. 2012). In ***In re E.M.***, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

> However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are

in a pre-adoptive home and whether they have a bond with their foster parents." **T.S.M.**, **supra** at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." **Id.** at 269. The **T.S.M.** court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." **Id.**

In determining that termination of Mother's parental rights favored the Child's needs and welfare, the court reasoned as follows:

> The Child's best interest is served by her remaining in foster care and being adopted. She has been in care for eighteen (18) months, since seven (7) months of age. The [c]ourt is convinced that the parents will not resolve their significant issues in a reasonable amount of time. Child is thriving in a loving and healthy home which is a potentially permanent resource. She has clearly bonded with the resource parents, and the other child in the home. By now, any bonding with parents is very limited at best. Child cannot wait for an indefinite period of time for the stability and care of a permanent family in the hope that her biological parents will drastically change their behavior and accomplish their goals. She is doing well and has spent more time with their current family than with anyone else. It is clear to this [c]ourt that the best interest of Child is served by terminating the rights of the parents and having her being adopted. The [CASA] and the Guardian **ad litem** support the termination of parental rights.

Trial court opinion, 11/3/17 at 7-8 (unpaginated; citations to record omitted).

Mother, however, asserts error, citing a lack of evidence to support the court's findings as to bonding. (Mother's brief at 31-32.) Mother states:

> [T]he [c]ourt concluded that the child has "clearly bonded with the resource parents, and the other child in the home." However, no evidence was presented to support this finding. No bonding assessment was done and the [CASA] did not provide any testimony at the hearing. Additionally, there was no basis for the [c]ourt to conclude that "by now, any bonding with parents is very limited at best." Based upon the above, it was error for the [c]ourt to conclude that terminating Mother's parental rights would be in the child's best interests.

*Id.* (citations to record omitted).

Upon review, we again discern no abuse of discretion. The record supports the trial court's finding that Child's developmental, physical, and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to make a determination of Child's needs and welfare, and as to the existence of a lack of a bond between Mother and Child that, if severed, would not have a detrimental impact on her.

While Ms. Hoover testified that Mother's visits with Child went well (notes of testimony, 9/21/17 at 109-110), she confirmed that Mother missed a total of 39 of 56 visits with Child. (*Id.* at 73-75.) Moreover, Child was in the same pre-adoptive home since placement and was doing well and bonded with her resource family. (*Id.* at 85-86.) Ms. Hoover offered that Child "has developed a close relationship and attachment with her resource

parents and their adopted daughter. [Child] also enjoys playing with resource parents' two dogs." (*Id.* at 86.) As such, Ms. Hoover opined that it was in Child's best interests to terminate parental rights. She stated:

> The [Agency] believes that termination of parental rights would be in Child's best interest so that she may be adopted and have a stable permanent home. Prolonging this child in foster care and not allowing her stability and permanency in her life would cause more harm than termination of parental rights.

*Id.* It was noted on the record that the CASA also recommended Child remain in her resource home and favored termination of parental rights. (*Id.* at 110.)

Thus, as confirmed by the record, termination of Mother's parental rights serves Child's developmental, physical, and emotional needs and welfare and was proper pursuant to Section 2511(b). While Mother may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Lastly, court-appointed counsel for Mother additionally has filed a petition to withdraw as counsel. Counsel indicates that, by electronic mail dated January 6, 2018, Mother "no longer want[s] her involved in" and "discharged her from the case." (Petition of counsel to withdraw appearance, 1/18/18 at ¶10.) Counsel further notes that she advised Mother of the filing of the within petition and availability of her file without response. (*Id.* at ¶13.) However, as there is no simultaneous entry of appearance of another counsel on Mother's behalf, or suggestion thereof, we deny counsel's petition without prejudice. *See* Pennsylvania Orphans' Court Rules 1.7(b) ("Counsel who has entered an appearance before the court as provided in subparagraph (a) shall not be permitted to withdraw without filing a petition to withdraw and obtaining the court's leave, unless . . . there is a simultaneous entry of appearance by other counsel that will not delay the litigation.").

Decree affirmed. Petition to withdraw as counsel denied without prejudice to petition the Orphans' Court. If the court grants the petition to withdraw, then it should make a determination as to whether substitute counsel is required for any further appellate review.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/20/2018</u>